AMANDA B. WHEELOCK v. PROVIDENT LIFE & ACC. CO.

Eastern Section. June 15, 1929.

Petition for Certiorari denied by Supreme Court, October 19, 1929.

P. H. Thach and C. C. Abernathy, both of Chattanooga, for plaintiff in error.

John A. Chambliss, of Chattanooga, for defendant in error.

HEISKELL, J. This is a suit on an accident insurance policy for one thousand dollars ($1000) which insures against:

> "The effects resulting, without other contributing cause, from bodily injury sustained during the life of this policy, solely and exclusively through external, violent and accidental means . . ."

At the conclusion of plaintiff's proof, the court granted a peremptory instruction in favor of defendant and dismissed plaintiff's suit. Plaintiff has appealed. The assignments of error contend that there is evidence to justify a verdict for plaintiff, and that the case should have been left to the jury.

Between eight and nine o'clock p. m. on January 9, 1927, William E. Wheelock fell in his bathroom. Almost immediately after the fall, he had a severe hemorrhage. He died on January 12th after having another hemorrhage that morning. His wife and his son heard the fall from downstairs and ran up to the bathroom. Mrs. Wheelock and son say he was bleeding at the lips and his forehead was cut or bruised. The son says although his father had been in bad health that he thought he was better as he was planning to go to Florida in a car driving himself.

Dr. Y. L. Abernathy made an affidavit upon the blank form of the company in which he says the external evidence of injury were "cut lips and swollen mouth." In answer to the question "What was the primary cause of death?" he says: "Gastric and duodenal ulcers." And he answers the question "What was the contributory cause of death?" "Gastric hemorrhage." Dr. Abernathy died before the trial.

Dr. McDonald, the physician and friend of the insured, testified as follows:

> "Q. Doctor, was this ulcerated condition of the stomach of Mr. Wheelock's what you would call a grave matter or a serious matter? A. Yes, sir, a duodenal ulcer is a very serious matter.

> "Q. And on that account you say he was suffering from a condition there that seriously impaired the soundness or healthfulness of his body, did it not? A. Yes.

> "Q. And he had been suffering in that way, as you say, for something over a year? A. Well, it had been something over a year or just about a year when I first saw him.

"Q. And he had been more or less incapacitated from looking after his duties as Superintendent of Terminals here? A. Yes.

"Q. Now, that ulcer and that condition there, was bleeding off and on nearly all the time, was it not? A. Well, he had had—it was not bleeding all the time, but he had had, as I understand it, of course I cannot testify to the actual fact, but I understand he had his first hemorrhage during the strike of the railroad trainmen here about the winding up of the war, something like, I think, five years before his death.

"Q. And that condition had been going on for some time? A. Yes, I don't think there is any question about that.

"Q. That tends to drag a man down and weakens him very much, does it not? A. Yes, he was weakened considerably. I know that to be a fact.

"Q. I ask you if it was not true, doctor, that in your opinion Mr. Wheelock had been bleeding or suffering from the effects of this ulcer, to such an extent that that was the cause of his fall? A. Well, I think probably so, yes.

"Q. No other specific thing being there to put your finger on, it was through the weakness on account of his condition? A. I don't know that to be so.

"Q. That is your opinion? A. I know he was weak and probably tottery, and might have had a fainting spell and got the fall, that they refer to.

"Q. In view of the medical testimony and the facts stated here in your hearing, that is the most probable cause for the fall? A. Yes, I think so.

"Q. In your opinion, doctor, I will ask you if the cause of his death was not from bleeding and this condition in the stomach? A. Yes, I don't think there is any question but what he died from loss of blood from that duodenal ulcer."

The question is, whether on this proof the case should have gone to the jury. The cases cited show that it is a question not free from difficulty. Perhaps the cases cannot be reconciled. Counsel for defendant rely upon Cretney v. Woodmen Accident Company, 219 N. W., 448. In that case deceased on December 27, 1926, slipped in handling a log, became ill the next day. An operation was performed on the 29th and a cancerous condition was found. He died on December 30th. The court said:

"The defendant contends that the law may be stated as follows: (1) When an accident causes a diseased condition, which, together with the accident, results in injury or death complained of, the accident alone is to be considered as the cause of the injury or death, citing French v. Fidelity & Casualty Co., 135

Wis., 259, 115 N. W., 869, 17 L. R. A. (N. S.), 1011. (2) When, at the time of the accident, the insured was suffering from some disease, but the disease had no causal connection with the injury or death resulting from the accident, the accident is to be considered the sole cause, citing Bohaker v Travelers' Ins. Co., 215 Mass., 32, 102 N. E., 342, 46 L. R. A. (N. S.), 543; Leland v. Order of United Com. Travelers, 233 Mass., 558, 124 N. E., 517. (3) When, at the time of the accident, there was an existing disease, which, cooperating with the accident, resulted in the injury or death, the accident cannot be considered as the sole cause or as the cause independent of all other causes, citing Cary v. Preferred Accident Ins. Co., 127 Wis., 67, 106 N. W., 1055, 5 L. R. A. (N. S.), 926, 115 Am. St. Rep., 997, 7 Ann. Cas., 484.

"The trial court was of the opinion that this case fell within the first class. The defendant contends that it falls within the third class. · Stating the facts most strongly in favor of the plaintiff, the following situation was presented: The deceased was suffering from a cancerous growth in the region of his stomach, which was at the time in an advanced state, but which, up to the day of the accident, had given him no trouble, and which was unknown to him. He had remained in full physical vigor, as is indicated by the character of the work in which he was engaged. He died from a hemorrhage due to a ruptured blood vessel in the cancerous mass. He would have died eventually of the cancer had there been no rupture. The evidence is silent as to whether or not the rupture of a blood vessel in a cancerous mass of this kind, is a usual, ordinary, or expected termination."

(1) The general rules of law governing this situation seem to be well established. See note, 34 L. R. A. (N. S.), 445; also note, 52 L. R. A. (N. S.), 1203; 14 R. C. L., 1246; White v. Standard Life & Acc. Ins. Co., 95 Minn., 77, 103 N. W., 735, 884, 5 Ann. Cas., 83; Husbands v. Indiana Travelers Acc. Ass'n., 194 Ind., 586, 133 N. E., 130, 35 A. L. R., 1184, and note. The rule is stated thus in 14 R. C. L., 1246:

"It is also the general rule that if the insured, at the time of the alleged accidental injury, was also suffering from a disease, and the accident aggravated the disease, or the disease aggravated the effects of the accident, and actively contributed to the disability or death occasioned thereby, there can be no recovery upon the policy."

(2) In this case, we are entirely dependent upon the medical testimony as to the cause of death. Until an attempted operation a few hours before his death disclosed the condition, neither deceased nor any one else knew that he was suffering from cancer. Dr. Reese testified in substance as follows:

"When I examined Mr. Cretney, I found a slight raise in the skin above the appendix region. At that time I diagnosed it as a tumor deep in the abdomen, and advised Mr. Cretney's removal to the hospital. His fever was also rising, and his pulse getting faster. It looked like a bleeding ulcer to me. Dr. Cooksey removed one large growth from the abdomen, but I don't know whether he removed other smaller growths. There were several smaller growths there. He did not remove the large growth in the stomach, as he determined that, if he cut it out, it would have been necessary to remove about two-thirds of the man's stomach. It could not possibly have occurred between December 27th and December 29th. It must have been there at least six or eight months. Mr. Cretney's death was caused by bleeding of this growth. It was a contributing cause to Mr. Cretney's death."

In the death certificate, Dr. Reese stated:

"Operated December 29, 1926. Found a bleeding sore in the stomach, supposed to be malignant."

Dr. Cooksey did not testify, but prepared a statement, and, by stipulation, it was admitted in evidence as being what he would testify if present as a witness, and the statement was so received. He said:

"I operated upon Cretney, and found a ball resembling a growth in the stomach about three inches in diameter. It had the appearance of a cancerous growth in its last stages. I did not cut the growth out, because it had gone so far that it would have been necessary to take out two-thirds of the man's stomach. There is no question but what the growth caused Mr. Cretney's death, and that the death cannot be attributable to any accident."

Except for some collateral statements, this is the testimony as to the cause of death.

"It is considered that, under the authority of the cases cited, it must be held that death in this case was not due to violent, external and accidental means, entirely independent of all other causes. While the doctors did not testify that rupture of a blood vessel was ordinarily to be expected under the circumstances disclosed, they had the situation before them, and, in the light of their expert knowledge, testified that the cancerous condition was at least a contributing cause of death. This leaves no room for a jury finding that the cancerous condition was not a contributing cause of death within the meaning of the policy, and death could not therefore have been due to an accident entirely, independent of all other causes."

Another case cited for defendant is Railway Mail Association v. Weir, 156 N. E., 921, an Ohio case decided in February, 1927. Plain-

tiff was injured when another automobile struck his in the rear, and died soon after. Plaintiff recovered in the lower court but on appeal, the judgment was reversed. The court said:

"Plaintiff in error contends that the decedent died, not from an accident, as contemplated by the terms of the contract between the decedent and the association, but from a disease; that his death did not result alone from bodily injuries through 'external, violent and accidental means;' that, if the decedent received any accidental injury on the date of his death, such injury did not cause or produce the disease, which at least contributed to his decease; and that the diseased condition of the decedent existed for a long time prior to the date of his death.

"We have carefully examined the record, and must come to the conclusion that the death of Mr. Weir did not result alone from bodily injuries through external, violent and accidental means, and that for some time prior to the date of his death he had been afflicted with diseases which contributed to his death, if not the sole cause of his death. The record discloses that, after the collision on Madison avenue, the decedent got out of the car in which he was riding, and had some conversation with the driver or occupants of the car in the rear, then re-entered his own car, proceeded to the shopping district of the city, did some shopping, and returned to his home, and there died about nine o'clock in the evening; the accident having occurred at about three o'clock in the afternoon. The physicians were called to testify in the court below; Dr. Ricker being called on behalf of the plaintiff below, and Drs. Ramsey and Neill testifying in behalf of the defendant below. The medical testimony in some respects all points one way, and that is to the effect that the death of Mr. Weir was due to an embolus in the pulmonary artery, due to a sloughing off of a calcified area of atheromatous plaques of the aorta, and the lodging of them in the pulmonary artery. Dr. Ricker did not make a microscopic examination of the blood clot or embolus, nor did he take any more active part in the autopsy than that of a spectator. He did say, however, that in the autopsy several atheromatous plaques were found in Mr. Weir's aorta, and his testimony as to the cause of death was as follows:

"That this accident, the cause of this death, was due to an embolus in the pulmonary artery, due probably to a sloughing off of these little calcified areas of the atheromatous plaques of the aorta and lodging in the pulmonary artery. When this bit of calcified plaque lodged there, the blood stream was immediately stopped and began to coagulate, and, of course, a clot was formed behind the foreign body, and that caused an embolus, a thing

which we know as an embolus, which is one of the causes of sudden death. To my mind, the embolus may have been caused immediately by the sudden shock which this man received in the accident; an increase of blood pressure occurring, which rapidly swept this embolus through the circulation into the pulmonary artery and lodged there, causing this embolus.''

Counsel for plaintiff rely upon Freeman v. M. M. Accident Association, 156 Mass. 351. In that case the plaintiff recovered below and the insurance company appealed. The trial court instructed the jury that the ''question was whether or not before and at the time of the fall, the insured was suffering with the disease. If he was, then although the disease was aggravated, and made fatal by the fall, he could not recover; but if owing to existing lesions caused by the disease, he not having the disease at the time, peritonitis was started, the defendant was answerable, although if there had been a normal state of things the fall would not have occasioned such a result.'' The court held that this charge was according to the intention of the parties to the insurance contract and refused to reverse. If we take the first part of this charge as the law, the case is rather favorable to the defendant for the court told the jury if at the time of the fall the deceased was suffering with the disease, there could be no recovery.

Continental Casualty Company v. Lloyd, 165 Ind., 52, is also cited by counsel for plaintiff. In that case a man of unimpaired strength and activity and apparently in good health, stubbed the toe of his shoe against a water box extending a few inches above the street, and fell. The fall was a very hard one. When he was seen to get up, his clothes in front were covered with dust and his hands were lacerated. Immediately after the fall he complained of a headache. The next day he went to work but had headache, chills and lassitude. Was taken home and next morning the doctor found him in a stupor and at the end of nineteen days he died. An autopsy revealed a clot or tumor on the brain. Dr. Schleiker testified that the tumor found on autopsy, which possibly had weakened the wall of the artery and the shock of the fall ruptured the artery so that the fall was the immediate cause of the illness which resulted in Lloyd's death.

Dr. Ohlmacher, a witness for the insurance company, testified that the tumor had not reached the fatal stage and probably would not have produced death for years, but for the fall.

While the court held that there was evidence to sustain the verdict for the plaintiff, yet that case is not so strong for the defendant as the present case, Lloyd, the insured, was apparently in perfect health and actively engaged in his business until his fall. There was no question about his stumbling and getting a hard fall. Then the testimony of the doctors rather supported the idea that the shock of the

fall and not the disease was the immediate cause of death. In the present case, Wheelock had suffered from a cancerous condition for years; had been obliged to give up active business. He was depleted and weakened by the disease, therefore, it was probable that the disease caused him to fall. Certainly the fall did not produce the disease. Then the testimony of the doctors tend to show that the disease was the primary cause of death. Dr. McDonald, a friendly witness, says: "I know he was weak and probably tottery and might have had a fainting spell and got the fall that they refer to." "Q. In view of the medical testimony and the facts stated here in your hearing, that is the most probable cause for the fall? A. Yes, I think so." Again he says: "Yes, I don't think there is any question but that he died from loss of blood from that duodenal ulcer."

While the death of Dr. Abernathy prevented him from testifying, yet he signed and made oath to the proof of death which contains this: "What was the primary cause of death? Gastric and duodenal ulcers." Dr. Abernathy was the personal physician and close personal friend of the insured. The plaintiff is bound by any statement in the proof of loss until the statement is shown to be untrue. Here there is no proof to overthrow that of the statement that the primary cause of death was gastric and duodenal ulcers, that is the cancerous condition of the insured. We do not think there is evidence in this record to sustain a finding that the death of the insured resulted without other contributing cause, from bodily injury sustained solely and exclusively through external, violent and accidental means.

The assignments of error are overruled and the judgment of the court below is affirmed. Appellant and sureties on appeal bond will pay the costs of the appeal.

Owen and Senter, JJ., concur.