# NORTH AMERICAN INS. CO. v. ELLISON.—267 S. W. (2d) 115.

Eastern Section. January 6, 1954.

Petition for Certiorari denied by Supreme Court, April 16, 1954.

Fowler, Long & Fowler and Wilbur W. Piper, all of Knoxville, for plaintiff in error.

Andrew Johnson and S. F. Dye, both of Knoxville, for defendant in error.

McAMIS, P. J. The policy here in suit provides benefits for loss of life resulting from bodily injury caused by accident "within thirty days from date of accident * * * directly and independently of all other causes * * *" Following a fall on the back steps of her home on January 30, 1951, the insured, Mrs. Jennie Ellison, was taken to the Knoxville General Hospital where she died on February 13, 1951. This suit instituted by her husband as the named beneficiary resulted in a verdict and judgment in his favor from which the

Company has appealed insisting that the insured died, at least partly, as a result of a number of diseases and not "directly and independently" as a result of the fall. This contention shaped the issues before the jury and it becomes our duty to determine whether, in the view most favorable to the plaintiff, there is sustaining material evidence.

At the time of her death Mrs. Ellison was about 72 years of age and somewhat obese. The fall resulted in a fracture of the right ankle. She was put in the care of Dr. Jones and remained confined to her bed in the hospital continuously from the date of the fall until her death, a period of about two weeks.

Dr. Jones testified that, while insured suffered from a number of chronic organic diseases including impaired kidney function, hardening of the arteries, an enlarged heart and bronchitis, these were chronic conditions which a large percentage of the normal population have without any great impairment of health.

It was Dr. Jones' opinion that the cause of death was a massive pulmonary edema, or filling of the lungs with fluid, in turn caused by stasis which he defined as the blood vessels remaining at a standstill due to the patient being at bed rest. According to Dr. Jones, the inactivity of the blood vessels caused a clot to form in the iliac vein leading from the left leg, resulting in thrombophlebitis and finally in the lungs filling with fluid due to a clogging of the veins at that point. It was his opinion that the chronic conditions with which insured was suffering at the time of the fall had no connection with "the fact that she had a thrombose form"; that these conditions did not cause her death; and that the "injury itself would not prevent these things from forming nor would it cause them to form in the place that they did * * * she

could have been injured in the arm and still have thrombosis of the vein in the leg—just being in bed is what caused that."

It is insisted, as we understand, that this testimony is overcome as a matter of law by the testimony of Dr. Monger detailing his findings from post mortem examination and, particularly, Dr. Monger's failure to find an embolus or blood clot in the lungs. Since the filling of the lungs with fluid was the immediate cause of death which Dr. Jones testified was caused by an embolus there, it is insisted Dr. Monger's failure to find the embolus destroys the premise upon which Dr. Jones' opinion is based. We think this was a question for the jury. The record fairly shows that Dr. Jones had seen the post mortem findings of Dr. Monger at the time he testified on direct examination. He was sharply cross examined about them and on re-direct examination reiterated his former testimony as to the cause of death.

We think when properly analyzed and understood the net result of Dr. Jones' testimony is that being bedfast caused the clogging of the veins which in turn caused the formation of fluid in the lungs resulting in death; that while the chronic conditions and diseases with which insured was suffering did not cause death and were entirely compatible with life, the cumulative effect of the heart, lungs and kidneys being unable to function properly made it impossible for insured to survive confinement in bed.

The proof shows that insured was leading an active life and doing her own house work prior to the accident. She would not have died when she did had it not been for the injury sustained in the fall because, except for that injury, she would not have been confined to bed and would

not have suffered the consequences of stasis which in her case was fatal.

The question is, Does a physical infirmity which lowers the resistance of an insured to the effects of injury and normal medical treatment, resulting in death, mean that death did not result directly from an accidental injury and independently of all other causes? Does an insurer take the insured with all the physical defects and infirmities existing at the date of the policy or which may develop with advancing age or is it bound to indemnify only against such results as would follow injury to one in normal health? We know that the chances of surviving an accident and medical treatment made necessary by an accident diminish progressively with age. But it could hardly be argued that it is the function of the Court to say as a matter of law when old age and not the effects of an accident becomes the predominant cause of disability or death. Yet, the difficulty of drawing a line is little less formidable in cases like the present where a predisposing infirmity of body militates against the chances of recovery.

Due in some measure to differences in policy provisions it would be difficult to reconcile entirely judicial opinion and expressions on the subject. The rule which seems to have been generally accepted, however, is that if the insured, at the time of the accidental injury, was suffering from a disease or infirmity which proximately caused or concurred with the accident in causing disability or death no recovery can be had on a policy insuring against disability or death resulting from an accident directly and independently of all other causes. Annotation, 131 A. L. R. 242.

On the other hand, under policies containing terms similar to the policy here under consideration, if the previously existing and predisposing infirmity or disease was merely a condition or secondary cause, and the accident the predominant cause recovery is allowed. Ib., at page 241 and collected cases.

██ "The insurance company * * * may be held liable where the accident can be considered as the sole and proximate cause of death or disability, although disease or infirmity may have been present as a condition or secondary cause, or where the death is the reasonable and natural consequence of the injury, although disease may have supervened, or where the accident is the true cause of death or injury and the disease but the occasion." 45 C. J. S., Insurance, Sec. 776, p. 812. See to the same effect 29 Am. Jur., p. 748.

██ If the peril insured against be the efficient and predominating cause it is regarded as the proximate cause even though the result was brought about by a chain of events set in motion by the accident and "operating with reasonable certainty to occasion the loss" and it is not necessary that the peril insured against be the nearest cause in point of time or place. Maness v. Life & Casualty Ins. Co., 161 Tenn. 41, 28 S. W. (2d) 339; Hughes v. Provident Mut. Life Ins. Co., Mo. App., 258 S. W. (2d) 290.

The opinion in the Maness case cites and relies upon authorities maintaining the view that, under an accident policy, recovery will be allowed "although the more immediate cause of death be an operation necessitated by the accidental injury." [161 Tenn. 41, 28 S. W. (2d) 340.]

██ Taking the evidence in the light most favorable to the plaintiff-beneficiary and giving him the benefit of

every reasonable inference therefrom, we hold the evidence sufficient to support a jury finding that disease and age merely furnished a condition causing death to follow from a chain of events set in motion by the accident. One event in the chain was the bed rest to which insured was put as a part of the treatment normal to a broken ankle just as an operation was a link in the chain in cases cited by Chief Justice Green in the Maness case, supra.

National Life & Acc. Ins. Co. v. Follett, 168 Tenn. 647, 80 S. W. (2d) 92, in which the opinion was also written by Chief Justice Green, was a suit on an accident policy containing restrictive language very similar to the policy in this case. The insured, an apparently active and robust man, fell while working on a punctured tire in his garage. He went immediately to bed and died the same day. As in this case, post mortem examination revealed an impairment of his internal organs caused by disease. Two doctors testified that in their opinion death was caused by shock from the fall and that the diseased condition of his internal organs did not contribute to his death. Three doctors expressed the contrary opinion. It was held that the testimony of the two doctors, the insured's vigor and activity prior to the fall and his death so soon thereafter sustained a jury finding in favor of the beneficiary.

Defendant relies upon Wheelock v. Provident Life & Acc. Ins. Co., 10 Tenn. App. 184; Provident Life & Acc. Ins. Co. v. Campbell, 18 Tenn. App. 452, 79 S. W. (2d) 292 and Fisher v. Travelers' Insurance Co., 124 Tenn 450, 138 S. W. 316. We think each of these cases is distinguishable from the present case.

Of these cases, Wheelock v. Provident Life & Acc. Ins. Co. involved facts more like those in the present case. The insured, due to a cancerous condition of long stand-

ing, had been forced to give up his business prior to a fall in his bath room. Almost immediately after the fall he suffered a severe hemorrhage. He was weakened by the disease and it was probable that his depleted condition caused him to fall. He died from loss of blood. His personal physician and friend testified that the primary cause of death was loss of blood from his ulcers or cancerous condition. The court held that the plaintiff was bound by the testimony of the physician and that there was no evidence "to overthrow * * * the statement that the primary cause of death was gastric and duodenal ulcers, that is the cancerous condition of the insured."

In that case the weakened condition of the insured due to disease caused him to totter on his feet and, as the court found, probably caused him to fall. If so, it could hardly be argued that disease was not a proximate cause of his death. Here, the reverse situation is presented. There is no insistence that any disease with which the insured suffered caused her to fall and, as we have pointed out, the injury sustained in the fall set in motion a chain of events resulting in death.

In the Campbell case, supra, the insured suffered only a mental shock with no bodily injury when the automobile he was driving struck and injured a child. There was evidence that he suffered prior to the accident from hardening of the arteries which, coupled with the unusual pressure caused by the excitement of the accident, resulted in death. A verdict was directed on two grounds: (1) The evidence showed that accident and disease concurred to cause death and, therefore, the accident could not have been the sole cause and (2) Excitement due to an accident cannot be considered a "bodily" injury within the meaning of the policy.

Fisher v. Travelers' Insurance Co., supra, is not in point. In that case the trial judge charged the jury that if the insured was accidentally injured and later received medical treatment following which she died, the beneficiary could not recover if the accident and medical treatment combined to cause death. This, of course, was favorable to the appellant insurance company. The opinion fails to show that the court approved it as a correct statement of the law if in fact any complaint was made of it.

The refusal of the Court to charge defendant's special request is also assigned as error. In the general charge the court told the jury that, under the law of insurance, the accident could not be regarded as the proximate cause of death unless the jury should find from a preponderance of the evidence that it was the efficient, procuring and predominant cause. The court then charged: "Now, the expression 'independently of all other causes' as used in the policy has a definite meaning, and requires the plaintiff to prove by a preponderance of the evidence that the injuries claimed to have been sustained by the deceased were proximately the sole cause of death; in other words, that the injuries were alone responsible for her death."

In substance, the requested charge is that the beneficiary could not recover if the insured suffered from a disease or diseases which the accident merely aggravated and which actively contributed to the death of the insured. While this is a correct statement of the law, in view of the general charge we do not think the court's refusal to charge it affected the result. The Court as shown had charged the jury that the beneficiary could not recover unless the injuries alone were responsible for insured's

death. This excluded as a cause the combined effect of disease and accident.

Affirmed with costs.

Hale, J., and Wilkerson, Special Judge, concur.