Mrs. Leota Britton, Adm'x, etc.

*v.*

Prudential Insurance Co. of America.

(*Knoxville,* September Term, 1959.)

Opinion filed December 11, 1959.

Fraker, Silvers & Coleman, Greeneville, for Mrs. Britton.

S. J. MILLIGAN, Greeneville, ERNEST F. SMITH, PENN, HUNTER, SMITH & DAVIS, Kingsport, for Prudential Insurance Co.

MR. JUSTICE BURNETT delivered the opinion of the Court.

Both parties heretofore petitioned for certiorari which certioraris have been granted. Briefs have been filed, arguments heard and we now have the matter for disposition.

On February 2, 1958, the insured, aged 70, slipped and fell on icy pavement, breaking his hip. At the time of this fall he was suffering from arteriosclerosis which is usual for a person of this man's age. Otherwise his

health was normal and he was engaged in normal activity for one of this age. In this fall he sustained a fracture of the shaft of the left femur and avulsion of the trochanter of the left femur, leaving visible evidence of the injury.

Two days after this fall an operation was performed on Mr. Britton to reduce this fracture and put the fragments back together by use of normal pins, etc., used in surgery. One doctor performed the operation and was assisted by the insured's physician. The operation was successful and the patient then hospitalized to be treated for these fractures after this operation. Among other treatments given the patient was that after a few days he had to sit up in a chair and take certain leg exercises to keep down stagnant circulation that might contribute to thrombosis. He continued to progress satisfactorily until February 16th, when about 5:00 o'clock a.m. he awakened and told his nurse that he could not go back to sleep and asked her to raise his bed and give him a paper and his glasses, which she did. After a few moments he complained of a slight pain in his chest and dropped over dead. His death was attributed to "an acute coronary thrombosis". No autopsy was had. The death certificate as signed by his physician was that he died of "acute coronary thrombosis."

The suit herein was instituted by his administratrix. She insisted that his death was due to accidental means within the terms of the policy. The pertinent and governing clause of the policy provides for accidental death benefits (the life insurance provisions of the policy were paid and there is no question about them) that where death occurred "as a result, directly and independently

of all other causes, of bodily injury, effected solely through external, violent and accidental means * * * provided, however, that no Accidental Death Benefit shall be payable if the death of the Insured * * * resulted directly or indirectly from bodily or mental infirmity or disease in any form.''

The defendant plead nil debit and filed special pleas (1) that insured's death was not the result ''directly and independently of all other cause, or bodily injury'', but that at and prior to the date of the accidental injuries, the insured was suffering from arteriosclerosis, which disease caused or proximately contributed to insured's death; (2) that insured died of coronary thrombosis which was attributable to the arteriosclerosis and that the accident would not have caused death and that insured's death was due wholly to a disease or to a disease cooperating with the accident, and that the accident was not the sole cause or the independent cause of his death; and (3) that the proof of death affirmatively shows that the cause of death was, as returned by his doctor, ''Acute Coronary Thrombosis,'' which was the direct and proximate result of a pre-existing bodily infirmity or disease, to-with, arteriosclerosis, and that the plaintiff had not complied with the conditions of the policy as to due proof of death, as said policy provides that no accidental death benefits should be payable if the death of the insured resulted ''directly or indirectly from bodily or mental infirmity or disease in any form.''

The matter was submitted to a jury and that body found in favor of the plaintiff and returned a verdict in her favor for $5,000. On appeal the Court of Appeals reversed and remanded because that body was ''not sat-

isfied with the development of the proof or the charge of the court on what we consider the vital principles of this suit.''

As said above both parties petitioned for certiorari, both of which were granted. In one of these petitions the statement is made that no different or further proof could be developed and nothing would be gained by remanding it for another trial. The other party in its petition for certiorari and in answer to the petition in which this statement is made does not deny said statement. This Court inferentially gathers from these petitions that both parties concede that no additional or new proof could be adduced on the matter. It is for this reason that both petitions were granted and we have determined to decide the lawsuit on the record as made up below.

The authorities on the question involved under a similar wording of a contract are legion as will be shown by reference to a very comprehensive note on the question found in 131 A.L.R. beginning at page 240. When one follows this note up in the Blue Book of A.L.R., the hundreds of cases will be seen wherein the question was treated. We have concluded after reading many cases on the subject, including numerous ones from this State, that in most of these cases, if not all, the result of them depends upon the particular facts developed in each case.

The annotater in the A.L.R. note supra, at page 242 thereof makes this very pertinent statement:

''Where, however, at the time he sustained an accidental injury the insured was suffering from a disease

or other infirmity, and such disease or infirmity proximately caused, or substantially contributed to, his death or injury, it is generally held that no recovery can be had under a policy insuring in substance against death or injury resulting, independently of all other causes, from accidental means, or variations of such provisions, and containing no express exception with respect to disease, infirmity, etc. This conclusion was reached in the following cases, which are set out infra, II a.''

Then follows a list of cases from practically every State in the Union including two Court of Appeals opinions from this State in which this Court denied certiorari. One of these cases is *Wheelock v. Provident Life & Accident Ins. Co.,* 10 Tenn.App. 184, and the other is *Provident Life & Accident Ins. Co., v. Campbell,* 18 Tenn. App. 452, 79 S.W.2d 292. Both of these cases are distinguished by the Court of Appeals later on in the case of *North American Ins. Co. v. Ellison,* 37 Tenn.App. 546, 267 S.W.2d 115, on the facts. It being shown in the Ellison case that the facts of these two cases do not meet with the facts of the Ellison case.

In the Wheelock case the Court of Appeals, speaking through Judge Heiskell quoted with approval and adopted a statement as follows:

" 'It is also the general rule that if the insured, at the time of the alleged accidental injury, was also suffering from a disease, and the accident aggravated the disease or the disease aggravated the effects of the accident, and actively contributed to the disability or death occasioned thereby, there can be no recovery upon the policy.' "

■ The Campbell opinion, cited above, followed the same principle. It is likewise interesting to note that in the Campbell opinion which was prepared by Judge Faw, that Court adopted and approved a correct rule of law which is applicable under a case of this kind as follows:

" 'As applied to contracts of accident insurance, the doctrine of proximate cause is clearly distinguished from its application to a case of ordinary negligence, the distinction being that in accident insurance contracts the liability is measured by the contract, and the doctrine of proximate cause is applicable only in determining whether or not an injury is caused solely by the act or accident against which indemnity is given, while in ordinary negligence cases the proximate cause determines the existence of liability.' " 18 Tenn.App. 457, 79 S.W.2d 295.

Thus it is under these sound principles of law which are applicable if the facts meet them that we come to a determination of the present case. The facts of the fall and the resulting death and the cause assigned therefor have hereinabove been related. So far as here applicable the insured's or deceased's doctor testified as follows:

"Q. So, if I understand you correctly, the immediate cause of this man's death was acute coronary thrombosis? A. Yes, that's right.

"Q. And you say, translated into laymen's parlance, language, that a contributing cause to the death not related to terminal disease, was a fracture of the hip? A. Yes sir.

"Q. Then based on that answer, Doctor, state whether or not, in your professional opinion, Mr. Britton's death was the result directly and independently of all other causes of the accidental bodily injuries sustained by him as a result of his fall on the ice on or about February 2, 1958? A. His death was due indirectly to his accident.

"Q. And that, in other words, you think that the accident was a contributing cause? A. Yes, and the death certificate, you will notice, contributing cause not related to the terminal disease, a fractured bone is not related to a heart attack, directly."

This doctor then testified to the fact that the insured had a diseased condition of the arteries antecedent to the accident and then he was asked:

"Q. Then it is your answer, if I understand you correctly, at the time of the accident he was suffering from a bodily and infirmity disease, is that correct? A. I guess you would call it a disease, it is a process of aging.

"Q. State whether or not, in your opinion, that disease caused or proximately contributed to his death? A. Yes."

This doctor further testified:

"Q. And but for that condition (arteriosclerosis) he he would not have had, in your opinion, this conorary thrombosis? A. That is true.

"Q. Your answer is he would not? A. Yes."

The operating surgeon when asked as to his opinion as the cause of death said:

"A. I would not be able to say with absolute certainty, I think, my opinion is that the accident probably did contribute to his death.

"Q. And that is as far as you want to go? A. Yes, and be honest."

The above two doctors were the witnesses for the plaintiff. The defendant offered a doctor and asked a hypothetical question as follows:

"Q. Lets ask the question again, the question has been asked, taking into consideration the foregoing hypothesis, and assuming all the facts stated to be true, state whether or not Mr. Britton's death was a result directly and independently of all other causes, of the accidental bodily injury as a result of the fall on or about February 2, 1958? A. No."

Dr. Fox for the plaintiff in answer to a question said:

"A. I would not be able to say with absolute certainty, I think, my opinion is that the accident probably did contribute to his death."

The same doctor was asked:

"Q. Doctor, in your opinion, for the record, is it your opinion that the injury and surgery directly caused the coronary thrombosis, resulting in death? A. It is possible."

He was also asked:

"Q. And because of that it would be impossible to establish with absolute certainty the cause of his death, is that right? A. That is correct."

That is because there was no autopsy made and they did not have a chance to know other things than what they determined was the cause of his death. These doctors also testify in reference to the trouble that this man had with his heart; that this was a degenerative process and it made him more susceptible to death.

The strongest statement, and of course in considering the matter here which is that the trial court should have directed a verdict for the insurance company, is that we must take the very strongest statements on behalf of the plaintiff. The family physician when he was asked, in addition to what has been quoted from him above, said:

"Q. State whether or not, in your opinion, the accident and the surgery made necessary by reason of the accident, brought about the acute attack of thrombosis? A. I think it did indirectly, I think he would be living if he had not had his accident, and I believe that being confined to bed, undergoing surgery in a man his age, with resulting slowing of circulation was a contributing cause to his death."

▋ Under this state of the proof, and the contractual provisions of this policy, should the trial judge have directed a verdict or submitted the question to the jury? We have come to the conclusion that his death did not result "directly and independently of all other causes, of bodily injuries, affected solely through external, violent and accidental means", because as shown by the testimony of these doctors the man had arteriosclerosis and his death was due to an acute coronary thrombosis. The furthest they go in saying that this accident directly and independently of all other causes was the cause of his death is by making the statement last quoted from Dr.

McGuffin that due to his age and condition, etc., that he would be living now if he had not had the accident requiring him to be in bed and have the operation, etc. Can it be said that then his death is due directly and independently of all other causes to an accident?

The most that could possibly be gotten from what these doctors say about it is that due to the man's age, etc., suffering as he was from this arteriosclerosis and then having to have an operation by reason of the accident this might have caused the thrombosis, this is a far cry from being within the terms of his contract which provided that they would pay this additional $5,000 if his death was due "directly and independently of all other causes". We think that this case comes within that line of cases which hold that at the time of the accident if there was an existing disease, which, cooperating with the accident and resulting in his death that then the accident cannot be considered as the sole cause of the death or as a cause independent of all other causes. Such cases as those above cited from our Court of Appeals. Also see *Cary v. Preferred Acc. Ins. Co.*, 127 Wis. 67, 106 N.W. 1055, 5 L.R.A., N.S., 926, and cases there relied on.

Thus it is that we think under this proof, considering the strongest inferences from the proof in favor of the plaintiff, that there is no evidence to go to the jury under the terms of the contract that the deceased had with the insurance company upon which this action is based. The result is that it is our judgment that the motion for a directed verdict should have been sustained by the trial judge. It is now sustained and the action dismissed.