FIREMAN'S FUND INSURANCE COMPANY

*v.*

MRS. LUVERT GLANTON.

452 S.W.2d 861.

(*Nashville,* December Term, 1969.)

Opinion filed April 6, 1970.

HUGH GRACEY of GRACEY, BUCK, MADDIN & COWAN, Nashville, of counsel, for plaintiff in error.

AVON N. WILLIAMS, JR., of LOOBY & WILLIAMS, Nashville, for defendant in error.

Mr. Justice McCanless delivered the opinion of the Court.

We designate the parties as they appeared in the Circuit Court where the defendant-in-error, Mrs. Luvert Glanton, was plaintiff and the plaintiff-in-error, Fireman's Fund Insurance Company, was defendant.

The plaintiff, the widow of Joseph Tyree Glanton, sued the defendant to recover a death benefit of $10,000.00 which she claimed on account of the death of her husband under the terms of a group policy which insured him against the loss of his life "from bodily injury caused by an accident occurring while this policy is in force as to the Insured Employee and resulting directly and independently of all other causes * * * when injury results in loss of life of the Insured Employee within 100 days after the date of the accident." The defendant contends that the insured's death did not result from accidental injury "directly and independently of all other causes—

but to the contrary that the deceased died of a heart attack due to heart disease which had existed for a number of years prior to this accident.''

The case was tried before a jury and at the conclusion of the plaintiff's proof and at the conclusion of all the proof the defendant moved for a directed verdict. The judge overruled these motions except that he instructed the jury not to award a statutory penalty if they should find for the plaintiff.

The jury returned a verdict for $10,000.00 and the court entered a judgment for that amount in favor of the plaintiff and against the defendant. The court overruled the defendant's motion for a new trial, and the defendant prayed and perfected an appeal in the nature of a writ of error to the Court of Appeals who affirmed the judgment of the Circuit Court. We have granted certiorari.

The issue in this case is whether the death of Joseph Tyree Glanton resulted from bodily injury caused by an accident * * * "directly and independently of all other causes * * *.'' The plaintiff insists the death so resulted; the defendant, as we have observed, contends otherwise.

Joseph Tyree Glanton, hereafter referred to as the insured, was forty-four years old at the time of his death, had spent seventeen years in the military service of the United States, and had been given a medical discharge from the Navy in 1960. Early in 1962 he had been a patient in the hospital of the Veteran's Administration in Nashville when the following entries were made in his record:

"1. This 43 year old married retired Navy serviceman entered this hospital for the second time on 1-23-62

because of SOB* and anterior chest pain for three months. He was in good health for four years ago while in the Navy he developed sharp pain in the anterior chest which was brief. He was then free of symptoms for a good length of time but they returned and he was admitted to the Naval Hospital on two occasions finally receiving a medical discharge for coronary insufficiency and hypertension. He was placed on Serpasil and he has continued taking this medication one tablet a day until the time of admission. He had not been using nitroglycerine.''

"DIAGNOSES:

1. Arteriosclerotic heart disease.
   a. Normal sinus heart
   b. Regular sinus shythem
   c. Class II

2. Obesity due to excess of food.

3. Arteriosclerosis, general.''

When he died the insured was five feet nine inches tall and weighed about 212 pounds. He was, and for about nine months had been, a salesman for the North Carolina Mutual Insurance Company.

On the afternoon of July 2, 1963, the insured tried to drive his automobile past a truck, lost control of it, and collided with a tree. He was taken immediately to the Rutherford Hospital in Murfreesboro where his regular physician, Dr. W. E. Coopwood, examined him. The following summary of Dr. Coopwood's diagnosis appears on the records of the hospital:

"The patient was seen in the emergency room at Rutherford Hospital approximately 3:00 p.m. on 7-2-63 for

evaluation of injuries sustained in an auto versus tree accident approximately 45 minutes prior to admission to the hospital. On initial examination patient was perspiring profusely, was slightly dazed, unconscious, and was complaining of pain in the back and right chest cage. Examination of the patient revealed multiple superficial abrasions of the chest, abdomen, and extremities, and pain and tenderness in the right rib cage structures. Blood pressure readings were 100/70. Pulse 72 and regular. A markedly distorted right ankle was observed suggesting a fracture dislocation of that joint."

Dr. Coopwood testified that the injuries the insured sustained caused his blood pressure to drop and that he went into shock that precipitated the development of a clot which caused the heart to stop functioning.

The insured died at about eight fifty-five o'clock on the morning after his injury. He had a serious heart condition and we may assume, and the jury well may have assumed, that had he not been burdened with this infirmity the injuries resulting from the collision might not have caused his death. On the other hand, the testimony of Dr. Coopwood is clear that the injury caused a drop in the insured's blood pressure and shock which caused a clot, which resulted in the patient's death. The testimony of Dr. Coopwood is substantial and credible.

In *North American Ins. Co. v. Ellison*, 37 Tenn.App. 546, 267 S.W.2d 115 [1954], the policy provided for the payment of benefits for the loss of life resulting from bodily injury caused by accident "within thirty days from the date of accident * * * directly and independently of all other causes * * *." The insured fell on the back

steps of her home and fractured her right ankle. She was taken to the hospital and died two weeks later. The insured's husband, named as beneficiary in the policy, brought suit which resulted in a verdict and a judgment in his favor. On appeal to the Court of Appeals the Company insisted that the insured died at least partly as a result of a number of diseases and not "directly and independently" as the result of the fall.

The opinion of the Court of Appeals contains the following language:

"The question is, Does a physical infirmity which lowers the resistance of an insured to the effects of injury and normal medical treatment, resulting in death, mean that death did not result directly from an accidental injury and independently of all other causes? Does an insurer take the insured with all the physical defects and infirmities existing at the date of the policy or which may develop with advancing age or is it bound to indemnify only against such results as would follow injury to one in normal health? We know that the chances of surviving an accident and medical treatment made necessary by an accident diminish progressively with age. But it could hardly be argued that it is the function of the Court to say as a matter of law when old age and not the effects of an accident becomes the predominant cause of disability or death. Yet, the difficulty of drawing a line is little less formidable in cases like the present where a predisposing infirmity of body militates against the chances of recovery."

The Court of Appeals distinguished the case from *Wheelock v. Provident Life & Acc. Co.*, 10 Tenn.App. 184 [1929]:

"In that case the weakened condition of the insured due to disease caused him to totter on his feet and, as the court found, probably caused him to fall. If so, it could hardly be argued that disease was not a proximate cause of his death. Here, the reverse situation is presented. There is no insistence that any disease with which the insured suffered caused her to fall and, as we have pointed out, the injury sustained in the fall set in motion a chain of events resulting in death."

The facts of *Britton v. Prudential Ins. Co.,* 205 Tenn. 726, 330 S.W.2d 326 [1959], are that the insured, a man seventy years old, fell and sustained a fracture of the shaft of his left femur. The fracture was repaired by uniting the fragments with pins and the insured experienced normal recovery until the morning of the fourteenth day after he was hurt when he suddenly died.

There was in force on the life of the insured a policy providing for double indemnity if death should occur "as a result, directly and independently of all other causes, of bodily injury, effected solely through external, violent and accidental means * * *."

The insured's physician testified that the death of the insured resulted from an acute coronary thrombosis and that his death was due indirectly to the accident. The surgeon who performed the operation expressed the opinion that the accident "probably did contribute to his death." The physician who testified for the insurance company said that the insured's death was not the result of the injury "directly and independently of all other causes."

The following excerpt is from the Court's opinion, by Mr. Chief Justice Burnett:

"Under this state of the proof, and the contractual provisions of this policy, should the trial judge have directed a verdict or submitted the question to the jury? We have come to the conclusion that his death did not result 'directly and independently of all other causes, of bodily injuries, affected solely through external, violent and accidental means', because as shown by the testimony of these doctors the man had arteriosclerosis and his death was due to an acute coronary thrombosis. The furthest they go in saying that this accident directly and independently of all other causes was the cause of his death is by making the statement last quoted from Dr. McGuffin that due to his age and condition, etc., that he would be living now if he had not had the accident requiring him to be in bed and have the operation, etc. Can it be said that then his death is due directly and independently of all other causes to an accident?"

The facts of the *Britton* case are clearly distinguishable from those of *North American Ins. Co. v. Ellison,* supra, in which the insured's existing physical infirmities were conditions which militated against the chances of recovery and were not as in the *Britton* case at the least contributing causes of the death.

In *Liberty National Life Ins. Co. v. Reid,* 276 Ala. 25, 158 So.2d 667 [1963], the Supreme Court of Alabama in an opinion that dealt with a policy providing double indemnity benefits for "death resulting directly and solely from accidental means, exclusive or independent of all other causes" said that "if the accident aggravated a disease and hastened the death of the insured, the accident is yet considered the proximate cause of the insured's death, notwithstanding the gravity of the disease or that

the accidental injury would not have been fatal but for the infirmity." In the course of the opinion the Court observed:

"If an injury starts a chain reaction resulting in death, recovery may be had even if one of the links in the chain is old age, frailty and some links are dormant diseases or physical conditions without which the chain would be broken."

The jury's verdict was supported by material evidence. *D. M. Rose & Co. v. Snyder*, 185 Tenn. 499, 206 S.W.2d 897 [1947]. The record supports the conclusion that the cause of Joseph Tyree Glanton's death was the injury he sustained in the collision on July 2, 1963, and that the infirmities with which he was then afflicted were but conditions which gave him a greater susceptibility to them than would have been the case had he been in sound health when he sustained his injury. Within the meaning of the policy the accident resulted in the death of the insured "directly and independent of all other causes."

We overrule the defendant's assignments of error and affirm the judgment to which proper interest will be added. The costs are adjudged against the defendant.

DYER, CHIEF JUSTICE, and JENKINS and SMITH, SPECIAL JUSTICES, concur.

CRESON, JUSTICE, dissents.