**Edgar V. PARKER, Petitioner,**

v.

**PROVIDENT LIFE AND ACCIDENT IN-SURANCE COMPANY, Respondent.**

Supreme Court of Tennessee.

June 11, 1979.

Petition on Rehearing Denied
July 23, 1979.

Charles G. Taylor, III, Knoxville, for petitioner; Ayres, Parkey, Skaggs & Ware, Knoxville, of counsel.

Arthur G. Seymour, Jr., W. Kyle Carpenter, Knoxville, for respondent; Frantz, McConnell & Seymour, Knoxville, of counsel.

## OPINION

BROCK, Justice.

The plaintiff, Edgar Parker, seeks to recover from the defendant, Provident Life and Accident Insurance Company, the benefits provided under a group insurance policy for the loss of a leg. The plaintiff contends that he accidentally stepped upon a nail that penetrated his shoe causing a puncture wound of his foot and eventually the amputation of his leg after gangrene developed from the wound. The defendant argues that the loss is excluded from coverage under the policy. The Chancellor tried the case without a jury and found the issues in favor of the plaintiff and awarded a recovery. Upon appeal, the Court of Appeals concluded that the loss came within the exclusion clause of the policy and reversed the judgment of the Chancellor and dismissed the complaint.

I

The "insuring clause" of the policy is as follows:

"If an employee sustains accidental bodily injuries . . . and as the result of such injuries suffers any of the losses named in the table of losses below within ninety (90) days after the date of the accident, the insurance company will pay to the beneficiary, subject to all the terms, conditions and limitations of this

policy, a benefit for the loss determined in accordance with the table of losses . . ."

Under a section entitled "Limitations and Exclusions," the policy further provides:

"The benefits provided above will not be payable for any loss caused directly or indirectly, wholly or partly, by

(a) bodily or mental infirmity, ptomaines, bacterial infections (except infections which shall occur simultaneously with and through a cut or wound sustained through accidental means), any other kind of disease, or hernia in any form; . . ."

On September 10, 1975, the plaintiff discovered a puncture wound of his right foot which he contends was caused by a nail or tack which penetrated the sole of his shoe when he accidentally stepped on it. Because he suffered from diabetes and arteriosclerosis of long standing, the sensation in his foot was diminished, so that, this injury was not discovered immediately upon its occurrence. It is shown, however, that the plaintiff had been limping on September 9, 1975.

On the day his wound was discovered, the plaintiff was examined and treated by Dr. Simmons whose testimony was the only medical evidence offered at the trial. Despite Dr. Simmons treatment, bacterial infection of the plaintiff's foot developed into gangrene, necessitating the amputation of his leg on December 5, 1975. Dr. Simmons testified that the bacterial infection entered through the nail wound in plaintiff's foot at the time he stepped on the nail. He testified that the diabetes and arteriosclerosis from which the plaintiff suffered at the time of the accident had an "indirect effect" on the gangrenous condition that resulted from the nail puncture wound of his foot. Asked if the nail injury would have been trivial if the plaintiff had not been suffering from diabetes and arteriosclerosis, the doctor testified: "I couldn't say . . for sure." When further asked if the plaintiff's nail puncture wound would have caused the amputation of his leg if he had not been suffering from diabetes and arteriosclerosis, Dr. Simmons testified:

"It might not, but that's something I certainly couldn't make a definite statement on. I couldn't say yes or no on that to be sure."

At another point, the doctor testified that the diabetes and arteriosclerosis ". . . was an indirect factor." But, Dr. Simmons emphatically characterized the nail puncture wound of the plaintiff's foot as "the direct cause of the amputation."

The Chancellor found from this evidence that the plaintiff had lost his leg "as the result of" an accidental bodily injury to his foot and that such loss was not "caused directly or indirectly, wholly or partly, by . . . bodily . . . infirmity . . (or) any other kind of disease. . . ." The Court of Appeals, however, reached a contrary conclusion, holding that the plaintiff's loss was "caused directly or indirectly, wholly or partly," by the plaintiff's bodily infirmities or diseases of diabetes and arteriosclerosis.

## II

In *Metropolitan Life Ins. Co. v. Smith*, Tenn., 554 S.W.2d 123 (1977), this Court reversed the judgment of the Court of Appeals; and, the opinion of the Court of Appeals in the instant case shows that it believes that our opinion in *Smith* requires a conclusion herein that the insured's loss of his leg was excluded from coverage because he suffered from diabetes and arteriosclerosis. Thus, the Court of Appeals in the instant case says:

"This Court had held (in the *Smith* case) that exclusionary clauses which afforded no coverage for 'loss caused directly or indirectly' by other events were to be construed to mean that these other events must have 'proximately caused or concurred with the accident in causing death' or was a 'contributing proximate cause' to the loss . . . . As we understand the opinion of the Supreme Court, . . . (the *Smith* construction of such clause) was rejected and it was held that in matters such as this, the exclusionary language of the policy

should be applied as written as 'there is no judicial duty but to give the language its usual and ordinary meaning.' The policy in question in simple plain language provides it will not afford coverage for a loss caused directly or indirectly, wholly or partly by bodily infirmity."

The Court of Appeals then applied the "Smith construction" of such exclusion clauses to the evidence in the instant case and, finding no significant difference between the evidence in the Smith case and in the instant case, concluded that the plaintiff's loss was excluded from coverage.

We think it cannot fairly be said that we departed in Smith from the principles established in our earlier decisions that in order for bodily infirmity or disease of an insured who suffers an accidental injury to preclude coverage under a policy which excludes losses "caused directly or indirectly, wholly or partly" by such infirmity or disease, it must be shown that the bodily infirmity or disease was a proximate cause of the loss. See, Maness v. Life & Casualty Ins. Co., 161 Tenn. 41, 28 S.W.2d 339 (1930); Britton v. Prudential Insurance Co. of America, 205 Tenn. 726, 330 S.W.2d 326, 82 A.L.R.2d 605 (1959); North American Ins. Co. v. Ellison, 37 Tenn.App. 546, 267 S.W.2d 115 (1954).

In our opinion, the Smith case and the instant case are distinguishable upon the basis of the evidence adduced in each. In the Smith case, the insured, Dr. Smith, had expired from congestive heart failure, resulting from a buildup of fluid or blood in his lungs, following an accidental traumatic injury to his head. But the medical proof in that case showed that Dr. Smith had been suffering from severe, advanced arteriosclerosis to such an extent that one coronary artery was totally blocked and the other had 60 to 80 percent blockage, which was revealed upon autopsy examination. The autopsy further showed that Dr. Smith had "mild to moderate" subarachnoid hemorrhage in the occipital area due to the accident which he had suffered to his head. He also had a laceration and some hemorrhaging into the skin of his scalp. The insured's attending physician testified that in his opinion the traumatic injury sustained by the insured was the "predominant cause of death;" but, throughout his testimony he stated that the advanced coronary artery disease was also a causative factor in producing death. More importantly, he testified that it was the combination of the traumatic injury and the underlying disease that produced death and that in his opinion neither, acting without the other, would have been fatal. In concluding that the trial court was correct in directing a verdict for the insurance company, we noted:

". . . we are unable to find any material evidence from which a finder of fact could conclude that the pre-existing diseases did not *contribute in an active and measurable degree to the death, or that death would have occurred had the coronary artery disease not been a substantial causative factor.* Under these circumstances, we are of the opinion that the insurance carriers are not liable under the terms of their contracts." (Emphasis added.) 554 S.W.2d at 126.

■ It is true that in the Smith case we said, as noted by the Court of Appeals, that "there is no judicial duty but to give the language its usual and ordinary meaning." We adhere to that view; but a corollary rule of construction is also applicable, i. e., when the courts have repeatedly interpreted certain words in legal documents as having a particular meaning and the drafters of such legal documents continue to use such words with knowledge of the interpretation placed upon them by the courts it will be assumed that the draftsmen in using such words did so knowingly with the intention that such judicial gloss will be placed upon them. As held by the Missouri court in Gage v. Connecticut General Life Insurance Company, Mo.App., 273 S.W.2d 761, 47 A.L.R.2d 1234 (1954), a settled and widely accepted meaning accorded to a particular phrase is persuasive in the interpretation of an insurance policy thereafter using such phrase. See, also, Harris v. State Farm Mutual Automobile Insurance Co., 232 F.2d 532 (6th Cir. 1956), cert. denied 352 U.S. 827, 77 S.Ct. 40, 1 L.Ed.2d 49 (1956).

The courts of this State have repeatedly interpreted the word "cause," when used in exclusion clauses of insurance policies substantially equivalent to the exclusion clause in the policy now before the Court, to mean "proximate cause." *Maness v. Life & Casualty Ins. Co., supra; Fireman's Fund Insurance Company v. Glanton,* 224 Tenn. 213, 452 S.W.2d 861 (1970); *North American Ins. Co. v. Ellison, supra.* This interpretation accords with that given to such phrases by courts of other jurisdictions, whose holdings are summarized as follows:

"In accident insurance the question whether the insurer is liable for an injury depends on the proximate cause of the loss. The term 'proximate cause,' as here used, means the same as in other insurance cases, and a provision requiring loss to be caused by accident 'independent of all other causes' is equivalent to a provision requiring it to be the proximate cause." 44 Am.Jur.2d *Insurance* § 1215 (1969).

We adhere to the view stated by this Court in the *Glanton* case, *supra,* as follows: "In *Liberty National Life Ins. Co. v. Reid,* 276 Ala. 25, 158 So.2d 667 (1963), the Supreme Court of Alabama in an opinion that dealt with a policy providing double indemnity benefits for 'death resulting directly and solely from accidental means, exclusive or independent of all other causes' said that 'if the accident aggravated a disease and hastened the death of the insured, the accident is yet considered the proximate cause of the insured's death, notwithstanding the gravity of the disease or that the accidental injury would not have been fatal but for the infirmity.' In the course of the opinion the Court observed:

'If an injury starts a chain reaction resulting in death, recovery may be had even if one of the links in the chain is old age, frailty and some links are dormant diseases or physical conditions without which the chain would be broken.'" 452 S.W.2d at 865.

In the *Glanton* case, *supra,* this Court concluded that the cause of the insured's death was an automobile accident and that

". . . the infirmities with which he was then afflicted were but conditions which gave him a greater susceptibility to them than would have been the case had he been in sound health when he sustained his injury. Within the meaning of the policy the accident resulted in the death of the insured 'directly and independently of all other causes.'" 452 S.W.2d at 865.

Moreover, we discern very little difference between the connotation of the word "cause" as interpreted by the courts and the "plain and ordinary meaning" given to the same word in ordinary usage. Thus, the word "cause" is defined in the latest edition of the *American Heritage Dictionary of the English Language* as follows:

"That which produces an effect, result, or consequence; the person, event, or condition responsible for an action or result."

■ Applying the foregoing principles to the interpretation of the exclusion clause in the instant policy, we conclude that the evidence does not preponderate against the plaintiff, but, on the contrary, supports the conclusion of the Chancellor that the loss of the insured's leg in this case was the result of the accidental nail injury to his foot and was not caused directly or indirectly, wholly or partly, by his pre-existing arteriosclerosis and diabetes. The treating physician, Dr. Simmons, who supplied the only medical evidence in this record, testified that the nail puncture wound to the plaintiff's foot "was the direct cause of the amputation." Moreover, Dr. Simmons expressly declined to state that the nail puncture wound would not have caused the amputation of the plaintiff's leg if he had not been suffering from diabetes and arteriosclerosis. Thus, the medical evidence in the instant case contrasts markedly from that in *Metropolitan Life Ins. Co. v. Smith, supra,* in which the medical expert had testified that the combination of the traumatic injury and the underlying disease produced death and that in his opinion neither, acting without the other, would have been fatal. As noted by Mr. Justice Harbison in *Smith,* it is such

differences in the evidence in various cases, rather than the application of different rules of law, which account for the apparent disharmony in the decided cases which have dealt with this problem.

Accordingly, the judgment of the Court of Appeals is reversed and that of the Chancellor affirmed.

FONES, COOPER and HARBISON, JJ., and HUMPHREYS, Special Judge, concur.