**Mary Nell HODGES, Executrix of the Estate of W. E. Parrott**

v.

**VALLEY FORGE LIFE INSURANCE CO.**

Court of Appeals of Tennessee, Eastern Section.

April 29, 1971.

Certiorari Denied by Supreme Court April 3, 1972.

————◆————

Donaldson, Montgomery & Kennerly, John T. Baugh, Knoxville, for appellant, Valley Forge Life Ins. Co.

Ogle & Schmutzer, Sevierville, for appellee, Mary Nell Hodges.

OPINION

COOPER, Presiding Judge.

Mary Nell Hodges, Executrix of the estate of W. E. Parrott, deceased, brought suit against the Valley Forge Life Insurance Company to recover hospital confinement benefits provided in a policy of insurance issued her decedent by the National Health and Life Insurance Company. (Valley Forge is the successor in interest of National Health and has expressly assumed all obligations of the insurer under the policy issued Mr. Parrott).

The policy provides for payment of hospital confinement benefits at the rate of $1,000.00 per month "in the event of hospital residence occurring solely as the consequence of direct bodily injury resulting

from any accident and independently of all other causes. . ."

The plaintiff averred that the insured, Mr. Parrott, "fell on May 5, 1967, and as a result of said accidental fall he was confined to various hospitals from May 5, 1967, until November 4, 1967, that the said hospital confinement and subsequent death was caused and precipitated by the said accidental fall on May 5, 1967."

The defendant took the position in its special pleas that Mr. Parrott's hospitalization did not occur "solely as a consequence of direct bodily injury resulting from any accident and independently of all other causes as required by the policy, but resulted from other causes unrelated to accident. . ."

The trial judge, on trying the cause without the intervention of a jury, found Mr. Parrott "wasn't hospitalized as a result of the other troubles he had had in the past. He wouldn't have gone to the hospital had he not fallen, and, therefore, . . . he is entitled to recover." Accordingly, a judgment was entered in favor of the plaintiff for $6,000.00.

The defendant has appealed, insisting primarily that the evidence preponderates against the judgment.

The evidence presented on the trial was essentially by deposition. The only witness testifying in open court was Mary Nell Hodges, who is serving as executrix of her father's estate.

Mrs. Hodges testified that prior to May 1, 1967, her father "had been sick on different occasions, but he was up and around in the house and went out riding and everything. . ." and that he had no real bad health problems. On May 1, 1967, she found her father on the floor of the bathroom of her home and was told by him that he had "tripped on his pajamas as he went around the bathroom door" and had fallen and "hit his head on something and he hit his hips;" that after the fall her father "could move his arms and everything, but he couldn't walk."

According to Mrs. Hodges, Dr. Robert A. Broady examined her father on May 5, 1967, and admitted him to the Sevier County Hospital on that date. Subsequently, her father was in St. Mary's Hospital in Knoxville, the Sevier County Hospital, the East Tennessee Baptist Hospital, the Tecoma Hospital in Greeneville, and finally in the Milligan Clinic in Jefferson City, where he died on November 4, 1967, at the age of 79. The cause of death was given as pneumonia.

Dr. Broady testified he was called to the Parrott home on May 5, 1967, and found Mr. Parrott "in bed having quite a bit of pain and some trouble breathing and quite a bit of weakness and soreness;" that he observed no paralysis and that Mr. Parrott was able to speak.

Mr. Parrott was admitted to the Sevier County Hospital, where X-rays were taken and a general examination made by Dr. Broady.

Dr. Broady stated that no dislocations or fractures were found on examination; that he did find "some reddened places but no black and blue places;" that his "diagnosis at that time was shock from a fall, and I believe it was a day or two later in the hospital that we found out that he had a paralysis." Dr. Broady was asked:

"Q. At that point did you have an idea or did you have sufficient information to form a belief as to what may have caused this paralysis?

"A. Well, No. Now there are many things that might have caused the paralysis. He had had some high blood pressure over some years, and he'd had some pain around his heart at times. I was just seeing if there was anything here indicative an anything like this. Let's see, the 5th of May it shows he has some decreased blood supply to the back part of his heart."

\*　　\*　　\*　　\*　　\*　　\*

"A. . . . It's possible that he (Mr. Parrott) could have had that (intracranial accident) and fallen on account of that, and if he did, then the shock could have made him worse. I mean it could have contributed to his general condition, although it didn't cause the general condition. . . But to say whether he had an accident before he fell or not, I just don't know. . ."

When asked if the accident Mr. Parrott had could be a "contributing or a precipitating factor in his death," Dr. Broady answered:

"A. It could have been, yes. I mean it —If he had the stroke first, it might have weakened him a great deal and made his general condition so weak that it contributed. Or if he fell first, the shock of that might have been a—lowered his pressure at the time so that he got some clots which might have caused the accident, . . . Theoretically you could see how it could have done, but to say that it was that way, I can't say."

In a report written to counsel on March 12, 1968, Dr. Broady stated:

"In this case, I have no doubt that the fall increased considerable his (Mr. Parrott's) trouble mentally as well as general physical shock. It is my opinion that he fell on his buttocks and that said fall was contributory in some measure to his condition, requiring his hospitalization on May 5, 1967."

The evidence shows Mr. Parrott was transferred from the Sevier County Hospital to St. Mary's Memorial Hospital in Knoxville on May 19, 1967, for examination and treatment by specialists in internal medicine. Dr. James E. Turner, the internist who examined and treated Mr. Parrott during his stay in St. Mary's, testified he found no evidence of any recent trauma from a neurological standpoint and that his conclusions at the end of the examination were:

"A. . . . that the patient had arteriosclerotic cerebral vascular disease with severity, valvular heart disease with damage to the mitral valve, cardiac enlargement and a mild degree of heart failure with congestion of the lungs due to this . . . and . . . . [A]n acute urinary tract infection, both with infection in the bladder and in the epididymis, and we felt that these two things were the cause of his pain on admission to the hospital.

Dr. Turner also testified he found no evidence of paralysis or any other sign indicating that Mr. Parrott had had a vascular accident prior to, or during, his confinement in St. Mary's Hospital; that Mr. Parrott "had signs of Parkinsonism with what we call—it's cog wheeling on passive movements of the extremities, extremities moved in a jerky fashion, which is characteristic of Parkinson's disease. Also he (Mr. Parrott) had general rigidity of his upper extremities, which was felt was due to the same condition, but I (Dr. Turner) did not find any paralysis."

According to Dr. Turner, Mr. Parrott's physical condition was such as would presuppose him to have a later vascular accident. "He (Mr. Parrott) certainly had signs of generalized arteriosclerosis, and I think this would make it much more likely that he could have a stroke later. Also, he had evidence of valvular heart disease, and I mean by that he had roughening of one of his valves of the heart so that the heart was enlarged and a murmur was produced, and this condition can lead to a stroke due to a clot forming on this roughened valve and being cast into the blood stream to lodge in the brain, so he had two conditions that might have increased his chances of having a stroke at a later date," and both of these conditions were caused by disease.

Mr. Parrott left St. Mary's Hospital on May 26, 1967, and was re-admitted to Sevier County Hospital under the care of Dr. Broady. During his second stay in Sevier County Hospital, Mr. Parrott showed some

improvement, but had a series of strokes in June and July, 1967. Mr. Parrott was discharged from Sevier County on August 12, 1967.

Later, the record is silent as to the dates of confinement, Mr. Parrott was confined in the East Tennessee Baptist Hospital and in the Tecoma Hospital in Greeneville, ostensibly for the same reason as his previous hospitalizations, although the record is devoid of evidence to substantiate the cause of the confinement.

Mr. Parrott was admitted to the Milligan Clinic in Jefferson City, Tennessee, on the 18th day of October, 1967, while in an unconscious condition. Dr. Frank A. Milligan testified that on admission, Mr. Parrott was suffering "with an infection in his chest and was terminal with a bilaterial pneumonia." Mr. Parrott died on November 4, 1967. The cause of death was given as bilateral pneumonia.

As we view the medical evidence, Mr. Parrott's hospital confinements in 1967 were not due "solely" to the accidental fall on May 1, 1967, but were due in the main, if not solely, to disease which predated the fall.

The effect of a pre-existing disease or infirmity on recovery under an accident insurance policy has been frequently litigated. See Annotation 84 A.L.R.2d 176 et seq. In these cases, as pointed out in North American Ins. Co. v. Ellison, 37 Tenn.App. 546, 267 S.W.2d 115, "[t]he rule which seems to have been generally accepted . . . is that if the insured, at the time of the accidental injury, was suffering from a disease or infirmity which proximately caused or concurred with the accident in causing disability or death no recovery can be had on a policy insuring against disability or death resulting from an accident directly and independently of all other causes. Annotation, 131 A.L.R. 242.

"On the other hand, under policies containing terms similar to the policy here under consideration, if the previously existing and predisposing infirmity or disease was merely a condition or secondary cause, and the accident the predominant cause recovery is allowed. Ib., at page 241 and collected cases.

" 'The insurance company . . . may be held liable where the accident can be considered as the sole proximate cause of death or disability, although disease or infirmity may have been present as a condition or secondary cause, or where the death is the reasonable and natural consequence of the injury, although disease may have supervened, or where the accident is the true cause of death or injury and the disease but the occasion.' 45 C.J.S., Insurance, § 776, p. 812. See to the same effect 29 Am.Jur. p. 748." See also Britton v. Prudential Insurance Company of America, 205 Tenn. 726, 330 S.W.2d 326; Wheelock v. Provident Life & Accident Ins. Co., 10 Tenn.App. 184; Provident Life & Accident Ins. Co. v. Campbell, 18 Tenn.App. 452, 79 S.W.2d 292.

In the Campbell case, the court pointed out that:

" 'As applied to contracts of accident insurance, the doctrine of proximate cause is clearly distinguished from its application to a case of ordinary negligence, the distinction being that in accident insurance contracts the liability is measured by the contract, and the doctrine of proximate cause is applicable only in determining whether or not an injury is caused solely by the act or accident against which indemnity is given, while in ordinary negligence causes the proximate cause determines the existence of liability.' "

In Britton v. Prudential Insurance Co., 205 Tenn. 726, 330 S.W.2d 326, 327, 82 A. L.R.2d 605, recovery was sought under the accidental death provision of a life insurance policy, which covered death occurring " 'as a result, directly and independently of all other causes, of bodily injury, effected solely through external, violent and accident means.' " It appeared in evidence

**548**

that the insured was suffering from arteriosclerosis at the age of 70 years when he fell on an icy pavement and sustained a fractured hip requiring surgery. The insured died two weeks later. Medical witnesses testified that the immediate cause of death was an acute coronary thrombosis, to which the fractured hip and surgery contributed, as did the existing arteriosclerosis. The court, in reversing a judgment based on a jury's verdict in favor of the plaintiff, pointed out:

"The most that could possibly be gotten from what the doctors say about it is that due to the man's age, etc., suffering as he was from this arteriosclerosis and then having to have an operation by reason of the accident this might have caused the thrombosis, this is a far cry from being within the terms of his contract which provided that they would pay this additional $5,000 if his death was due 'directly and independently of all other causes'. We think this case comes within that line of cases which hold that at the time of the accident if there was an existing disease, which, cooperating with the accident and resulting in his death that then the accident cannot be considered as the sole cause of the death or as a cause independent of all other causes."

In the light of the above authorities, particularly the Britton case, supra, and the evidence that disease necessarily was a contributing cause, if not the sole cause, of Mr. Parrott's hospitalization, we hold plaintiff is not entitled to recover benefits provided in the policy of insurance for hospitalization "occurring solely as the consequence of direct bodily injury resulting from any accident and independent of all other causes." The judgment of the trial court is reversed and the suit is dismissed. Costs incident to the appeal are adjudged against the plaintiff, Mary Nell Hodges, as executrix of the estate of W. E. Parrott.

PARROTT and SANDERS, JJ., concur.