## Mulholland, Appellant, *v.* Fidelity & Casualty Company of New York.

Argued October 1, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

426

*E. Hall,* with him *Harry J. Alker, Jr.,* for appellant.

*Harold Scott Baile,* with him *Pepper, Bodine & Stokes,* for appellee.

OPINION BY RENO, J., November 12, 1947:

The insurance policy named appellant as beneficiary, and at the trial of her action upon it the jury reported to the court: "The jury didn't think there was enough evidence, your Honor, to return a verdict." Whereupon the trial judge discharged the jury, and, holding the jury's return a disagreement, the court below subsequently entered judgment upon the whole record for the defendant insurance company. Act of April 20, 1911, P. L. 70, §1, 12 PS §684.

The policy insured "Against Bodily Injury sustained . . ., through accidental means, and resulting directly, independently and exclusively of all other causes, in . . . Death (as specified in Article 2)." Article 2 provided: "If the Insured suffers total disability, and if, during the period of the said disability, but within two hundred weeks from the date of the accident, the Insured suffers death as the result of the bodily injury causing the said disability, or if, within ninety days from the date of the accident, irrespective of disability, the Insured suffers death as the result of a bodily injury: the Company will pay the Beneficiary The Principal Sum [$1000.00] . . ."

The insured, Father Duffy, was a Catholic priest, seventy-two years old at the time of his death, and with other priests lived in a rectory in Philadelphia. A fellow priest, Father McLaughlin, heard a noise which "sounded like a chair being bumped against the wall," and upon investigation at 6:30 p. m. found the insured

lying flat on his back on the first floor of the rectory opposite to the stairway leading to the second floor. His glasses were broken, his left elbow and right wrist were bruised and two fingers on his right hand were cut. He appeared dazed, and said "I fell." He walked to his bed on the second floor "under his own power." Dr. Frick, who had been the insured's physician for a number of years, was called, and later insured's right side appeared to be paralyzed, and he was breathing heavily. He died the next day.

Appellant's only witness was Father McLaughlin. She did not call Dr. Frick, but she offered in evidence his certificate of death. He certified that the immediate cause of death was "Cerebral apoplexy Due to generalized arterio sclerosis." The item of the certificate which is to be filled in where death is due to external causes such as accident, suicide or homicide was left blank by Dr. Frick.

The question for decision was whether the insured died as a result of an accident or from natural causes, and the jury rightly discerned that the evidence failed to provide a sufficient rational basis for judgment. The case was of that type which calls for expert medical testimony to establish causal connection between an injury and death. Without such testimony, the jury was obliged to conjecture about the cause of the death; whether it resulted from the fall or the cerebral apoplexy; whether the cerebral apoplexy, which was admittedly the immediate cause of the death, resulted from the fall or from the pre-existing arteriosclerosis condition. In short, appellant, upon whom rested the burden of proof, failed to present "facts or circumstances from which the jury could infer legitimately *to the exclusion of other inferences equally plausible* that the insured's death resulted from an accident": *DeReeder v. Travelers Ins. Co.*, 329 Pa. 328, 333, 198 A. 45. (Italics by Justice MAXEY.)

Judgment affirmed.