**Robert O. HUGHES, Executor of the Estate of Florence Hughes, Deceased, Appellee,**

v.

**KENTUCKY CENTRAL LIFE INSURANCE COMPANY, Appellant.**

Court of Appeals of Tennessee, Western Section.

June 29, 1973.

Certiorari Denied by Supreme Court Sept. 17, 1973.

George W. Ridenour, Jr., Clinton, for appellant.

Billy H. Leffew, Rockwood, for appellee.

NEARN, Judge.

This is a suit to recover under the double indemnity provisions of two policies of insurance.

Kentucky Central Life Insurance Company had issued two policies of insurance on the life of George Lester Hughes who died intestate in Detroit, Michigan on July 15, 1969. The defendant insurance company paid the normal death benefits of the policies, but refused to pay the additional benefits under the accidental death provisions of the policies. The parties concede that the ultimate beneficiary of the insurance policies was the deceased's wife, Florence M. Hughes. Prior to suit being filed for the accidental death provisions, the widow and beneficiary, Florence M. Hughes, died intestate in Roane County, Tennessee. Robert O. Hughes, one of the sons of George Lester Hughes and Florence M. Hughes, was appointed Administrator of his mother's estate. Hence, Robert O. Hughes, Administrator is the plaintiff in this suit.

Suit was filed on November 27, 1971.

The single issue upon which this matter was tried was: Did the death of George Lester Hughes result directly and independently of all other causes, from accidental bodily injury?

The policies of insurance both provided that in the event of death resulting directly and independently of all other causes, from accidental bodily injury, additional sums would be paid in the aggregate amount of $2,000.00.

The jury found the death to have been accidental within the meaning of the policies and awarded the plaintiff judgment in the amount of $2,000.00. The insurance company has appealed.

Numerically there are two Assignments of Error, but together they raise only a single issue, which is: There is no evidence from which the jury could have found that the death of George Lester Hughes resulted directly and independently of all other causes from accidental bodily injury and it was error for the Trial Judge to refuse to direct a verdict for the defendant at the close of all the proof.

The proof adduced below is rather meager. Plaintiff's proof consists in the testimony of the two sons of the deceased insured and the introduction of a death certificate. The sons testified that their father had not, prior to his death, suffered from any vascular disease or any other infirmity of the body. That the father lived in a "walk down" apartment off Calvary Street in Detroit, Michigan and that a flight of stairs had to be negotiated from the street down to the apartment. The sons were not present when their father died and could not testify about the circumstances of his death other than to say that when the body was observed in the City Morgue in Detroit, bruises were observed on various parts of the body including the head. The proof of the plaintiff concerning the accidental nature of the death, consists only of the testimony about

the bruises, the description of the ingress to the apartment, the introduction of the death certificate and reliance upon § 53–413 T.C.A.

At this juncture we must point out that there were two death certificates introduced at the trial. The copy of the death certificate introduced by the plaintiff will be termed the first death certificate and the copy introduced by the defendant will be termed the second death certificate.

For a better understanding of this matter we think it best that the death certificates be copied in this Opinion and they will be found in the Appendix marked as first and second death certificates.

Both death certificates were presented to the jury without objection.

As can be seen from an examination of the first death certificate, the immediate cause of death is shown as "Cerebral Vascular Disease". The space provided for conditions which gave rise to the immediate cause are left blank. Also, the space provided for other significant conditions is blank. However, the certificate shows that no autopsy was performed; that the death is classified as an accident and an injury occurred in a fall down stairs at the deceased's home.

The principal distinctions between the first and second death certificate are quite obvious. In the second death certificate, the classification of the death has been changed from "Accident" to "Natural" and the words "witnessed to have fallen down stairs" has been added to the description of how the injury occurred.

The defendant introduced the deposition of Paul William Campbell, medical examiner records clerk of Wayne County, Michigan. The clerk testified that the original records were changed on August 31, 1972. In other words, prior to August 31, 1972, the first death certificate was the official death certificate. It is the position of the defendant that the second death certificate is now and was at the time of trial the official death certificate and is therefore *prima facie* proof that the death was not accidental. But whichever certificate is considered, both show that "Cerebral Vascular Disease" caused or contributed to the death and therefore there can be no recovery.

Both sides to this controversy agree that § 53–413 T.C.A. is applicable and both rely on the statute.

Section 53–413 T.C.A. provides:

> "Each certificate provided for in this chapter, filed within six (6) months after the recorded event occurred, shall be prima facie evidence of the facts therein stated. * * *"

We are of the opinion that the Tennessee law was correctly set forth in the case of Shell v. Parrish, 6 Cir., 448 F.2d 528 (1971) wherein it was held that a death certificate constituted *prima facie* evidence as to how an injury occurred. This being true, there was before the jury from either death certificate, proof that the deceased on the day of his death fell down the stairs at his home. From the testimony of a son there is proof that the deceased was in good health and had never suffered from any heart condition nor had he ever had a stroke prior to the fall.

Also, when the defendant introduced the second death certificate, the record of the Wayne County Medical Examiner made on July 15, 1969, at 7:43 p. m. was also introduced. On this record there is a space for information after the printed words "manner of occurrence". These handwritten words are: "fell down stairs after drinking. seen to fall by neighbors". Under "Remarks" there is the statement that the deceased was found at the bottom of the stairs after being seen to have fallen; was carried to his room and the Detroit Police Department notified. That the deceased was conveyed D.O.A. to the Detroit General Hospital from his room; that there

were no marks of violence and that Homicide (Detroit Police Department) was satisfied as to the accidental nature of the event.

■■ It is the argument of the appellant that the words "Cerebral Vascular Disease" contained on the death certificates must also be taken as true and therefore the cause of death was not accidental. In the first place we were not aware that the miracle of modern medical science had so far advanced that a doctor could look at a dead body of a person who had just fallen down a flight of stairs and, without benefit of an autopsy or medical history, state that the immediate cause of death was vascular disease in the cerebellum. It would seem to our nonmedical minds that such diagnosis entails a great deal of guess work. But, be that as it may, in the second place the "immediate cause" of death is not necessarily the cause of death in the matter of policies of insurance. If an accident be the efficient and predominating cause of death, the accident is regarded as the proximate cause even though the result was brought about by a chain of events, and the accident need not be the nearest cause in point of time or place. Maness v. Life & Cas. Ins. Co. of Tenn., (1930) 161 Tenn. 41, 28 S.W.2d 339.

■■ It is also argued that the second or altered death certificate shows the death to have been "Natural" and the altered certificate is positive proof that the death was "Natural" as opposed to "Accidental". As to the credibility or reliability of the second or altered certificate we note that the proof shows that the original certificate was altered by the record clerk after this suit was filed without consulting the doctors who signed it, but after he discussed the matter with a Michigan doctor who was not present at the first instance and who did not sign the original death certificate. Suffice it to say, we think the jury was warranted in disregarding the change from "Accident" to "Natural" on the second certificate. A materially altered death certificate does not occupy the same status as an unaltered one. See § 53–421 T.C.A.

In the case of Reserve Life Insurance Company v. Whittemore, (1969 M.S.) 59 Tenn.App. 495, 442 S.W.2d 266, Judge Todd, speaking for the Middle Section of this Court discussed and analyzed most of the reported cases in this State involving similar circumstances to the instant one, and dealing with the issue of death caused by accident "directly and independently of all other cause." That Court concluded that the cases denying recovery could be distinguished from those allowing recovery on three principal grounds, i. e., the presence of proof of "(1) preexisting condition as a cause of the fall, (2) affirmative evidence of concurrence of accident and preexisting disease as causes of death, and (3) peculiar provision of the policy requiring bodily injury."

■ In the instant case none of these three distinguishing evidentiary elements are present. There is no hint of proof of any preexisting infirmity in this record. The proof is affirmatively to the contrary. Since there is no evidence of any preexisting infirmity, it must follow that there is no evidence of a "concurrence of accident and preexisting disease". Neither is there the presence of any peculiar policy provisions.

We overrule the Assignments of Error and hold that there is evidence from which the jury could have found that the death of George Lester Hughes resulted directly and independently of all other causes from accidental bodily injury.

The judgment below is affirmed and cost of appeal is adjudged against appellant and surety on its bond.

CARNEY, P. J., and MATHERNE, J., concur.

# FIRST DEATH CERTIFICATE

DETROIT DEPARTMENT OF HEALTH
VITAL STATISTICS DIVISION

Deposition Exhibit #1 Gump 9/28/72

## CERTIFICATE OF DEATH

Michigan Department of Public Health

Local File Number 9966 — State File Number

**DECEASED**

1. Deceased—Name: 5924 GEORGE LESTER HUGHES
2. Sex: MALE
3. Date of Death: JULY-15-1969
4. Race: WHITE
5a. Age—Last Birthday (Years): 60
6. Date of Birth: DEC-2-1908
7a. County of Death: WAYNE
7b. City, Town, or Location of Death: DETROIT
7c. Inside City Limits: YES
7d. Hospital or Other Institution: DETROIT GENERAL HOSPITAL
8. State of Birth: TENNESSEE
9. Citizen of What Country: U.S.A.
10. Married, Never Married, Widowed, Divorced: MARRIED
11. Surviving Spouse: FLORENCE MILLER
12. Social Security Number: 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
13a. Usual Occupation: CUSTODIAN
13b. Kind of Business or Industry: GUARDIAN GLASS
14a. Residence—State: MICH.
14b. County: WAYNE
14c. City, Town, or Location: DETROIT
14d. Inside City Limits: YES
14e. Street and Number: 735 CAVALRY

**PARENTS**

15. Father—Name: CLAY HUGHES
16. Mother—Maiden Name: UNKNOWN
17a. Informant—Name: JAMES F. HUGHES
17b. Mailing Address: ROUTE 5 BOX 100 BATTLE CREEK - MICH 49017

**CAUSE**

18. Part I. Death was caused by:
(a) Immediate cause: Cerebral Vascular Disease
(b) Due to, or as a consequence of:
(c) Due to, or as a consequence of:

Part II. Other significant conditions:

19a. Autopsy: No
19b. If yes were findings considered in determining cause of death:

20a. Accident, Suicide, Homicide, or Undetermined: Accident
20b. Date of Injury: July 15, 1969
20c. Hour: @ 6P. M
20d. How Injury Occurred: fall down stairs
20e. Injury at Work: No
20f. Place of Injury: Home
20g. Location: 737 Calvary, Detroit, Michigan

**CERTIFIER**

21. Certification—Physician:
22. Certification—Medical Examiner or Coroner: JOHN F. BURTON, M.D.
23a. Certifier—Name: John F. Burton M.D. / Lawrence Ribiat D.O. — Signature: Campbell, clerk — Date signed: JUL 17 1969
23b. Mailing Address: Medical Examiner of Wayne County

**BURIAL**

24a. Burial, Cremation, Removal: REMOVAL & BURIAL
24b. Cemetery or Crematory—Name: KELLY
24c. Location: WESTEL TENNESSEE
24d. Date: JULY-18-1969
25a. Funeral Home—Name and Address: FERGUSON FUNERAL HOME-6142 W. FORT-DETROIT MICH 48209
25b. Funeral Director—Signature: John L. Ferguson
26a. Registrar—Signature: George Pickett M.D.
26b. Date Received by Local Registrar: JUL 17 1969

8-36 8-68 300M

I hereby certify that the foregoing is a true copy of the record on file in the Detroit Department of Health, attested by the raised seal of the City of Detroit.

[stamp] 1973 By_____

George Pickett M.D.
Public Health Director

[signature]
Division Head

Dated JUL 18 1969

(AB290)

SECOND DEATH CERTIFICATE

DETROIT DEPARTMENT OF HEALTH
VITAL STATISTICS DIVISION

x Gifts Reposition Exhibit #1
9/28/72 a.

**CERTIFICATE OF DEATH**
Michigan Department of Public Health

STATEMENT MEDICAL EXAM
9-7-72
STATE FILE NUMBER

**9966**
LOCAL FILE NUMBER

| DECEASED — NAME | FIRST | MIDDLE | LAST | SEX | DATE OF DEATH (MONTH, DAY, YEAR) |
|---|---|---|---|---|---|
| 5924 GEORGE | LESTER | HUGHES | MALE | JULY-15-1969 |

| RACE WHITE, NEGRO, AMERICAN INDIAN, ETC (SPECIFY) | AGE—LAST BIRTHDAY (YEARS) | UNDER 1 YEAR MOS / DAYS | UNDER 1 DAY HOURS / MIN. | DATE OF BIRTH (MONTH, DAY, YEAR) | COUNTY OF DEATH |
|---|---|---|---|---|---|
| WHITE | 60 | | | DEC-2-1908 | WAYNE |

| CITY, TOWN, OR LOCATION OF DEATH | INSIDE CITY LIMITS SPECIFY YES OR NO | HOSPITAL OR OTHER INSTITUTION—NAME (IF NOT IN EITHER, GIVE STREET AND NUMBER) |
|---|---|---|
| DETROIT | YES | DETROIT GENERAL HOSPITAL |

| STATE OF BIRTH (IF NOT IN U.S.A., NAME COUNTRY) | CITIZEN OF WHAT COUNTRY | MARRIED, NEVER MARRIED, WIDOWED, DIVORCED (SPECIFY) | SURVIVING SPOUSE (IF WIFE, GIVE MAIDEN NAME) |
|---|---|---|---|
| TENNESSEE | U.S.A. | MARRIED | FLORENCE MILLER |

| SOCIAL SECURITY NUMBER | USUAL OCCUPATION (GIVE KIND OF WORK DONE DURING MOST OF WORKING LIFE, EVEN IF RETIRED) | KIND OF BUSINESS OR INDUSTRY |
|---|---|---|
| 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 | CUSTODIAN | GUARDIAN GLASS |

| RESIDENCE—STATE | COUNTY | CITY, TOWN, OR LOCATION | INSIDE CITY LIMITS (SPECIFY YES OR NO) | STREET AND NUMBER |
|---|---|---|---|---|
| MICH. | WAYNE | DETROIT | YES | 735 CAVALRY |

| FATHER—NAME FIRST | MIDDLE | LAST | MOTHER—MAIDEN NAME FIRST | MIDDLE | LAST |
|---|---|---|---|---|---|
| CLAY | HUGHES | | UNKNOWN | | |

| INFORMANT—NAME | MAILING ADDRESS (STREET OR R.F.D. NO, CITY OR TOWN, STATE, ZIP) |
|---|---|
| JAMES F. HUGHES | ROUTE 5 BOX 00 BATTLE CREEK, MICH. 49017 |

**PART I** DEATH WAS CAUSED BY: (ENTER ONLY ONE CAUSE PER LINE FOR (a), (b), AND (c))
APPROXIMATE INTERVAL BETWEEN ONSET AND DEATH

IMMEDIATE CAUSE
(a) Cerebral Vascular Disease
DUE TO, OR AS A CONSEQUENCE OF:

CONDITIONS, IF ANY, WHICH GAVE RISE TO IMMEDIATE CAUSE (a), STATING THE UNDERLYING CAUSE LAST
(b)
DUE TO, OR AS A CONSEQUENCE OF:
(c)

**PART II** OTHER SIGNIFICANT CONDITIONS: CONDITIONS CONTRIBUTING TO DEATH BUT NOT RELATED TO CAUSE GIVEN IN PART I (a)

AUTOPSY (YES OR NO) No
IF YES WERE FINDINGS CONSIDERED IN DETERMINING CAUSE OF DEATH

| ACCIDENT, SUICIDE, HOMICIDE, OR UNDETERMINED NATURAL Accident | DATE OF INJURY (MONTH, DAY, YEAR) July 15, 1969 | HOUR @ 6 P.M. | HOW INJURY OCCURRED (ENTER NATURE OF INJURY) fall down stairs WITNESSED TO HAVE FALLEN DOWN STAIRS |
|---|---|---|---|

| INJURY AT WORK (SPECIFY YES OR NO) No | PLACE OF INJURY AT HOME, FARM, STREET, FACTORY, OFFICE BLDG, ETC (SPECIFY) Home | LOCATION (STREET OR R.F.D. NO, CITY OR TOWN, STATE) 737 Calvary, Detroit, Michigan |
|---|---|---|

CERTIFICATION—PHYSICIAN: I ATTENDED THE DECEASED FROM ___ TO ___ AND LAST SAW HIM/HER ALIVE ON ___ I DID/DID NOT VIEW THE BODY AFTER DEATH ___ DEATH OCCURRED AT THE PLACE, ON THE DATE, AND, TO THE BEST OF MY KNOWLEDGE, DUE TO THE CAUSE(S) STATED
HOUR OF DEATH 6:30 P M

CERTIFICATION—MEDICAL EXAMINER: ... JOHN F. BURTON, M.D. ... EXAMINATION OF THE ... HOUR OF DEATH ... THE DECEDENT WAS PRONOUNCED DEAD

CERTIFIER—NAME John F. Burton M.D. Lawrence Hibert D.O.
SIGNATURE Purcell, clerk
DATE OR RITE JUL 17 1969

MAILING ADDRESS Medical Examiner of Wayne County

| BURIAL, CREMATION, REMOVAL (SPECIFY) Removal & Burial | CEMETERY OR CREMATORY—NAME KELLY | LOCATION WESTEL | CITY OR TOWN TENNESSEE 48269 |
|---|---|---|---|

| DATE (MONTH, DAY, YEAR) JULY-18-1969 | FUNERAL HOME—NAME AND ADDRESS (STREET OR R.D. NO, CITY OR TOWN, STATE, ZIP) FERGUSON FUNERAL HOME-6142 W. FORT-DETROIT MICH |
|---|---|

FUNERAL DIRECTOR—SIGNATURE John Ferguson
REGISTRAR—SIGNATURE George Probst M.C.
DATE RECEIVED BY LOCAL REGISTRAR JUL 17 1969

I hereby certify that the foregoing is a true copy of the record on file in the Detroit Department of Health; attested by the raised seal of the City of Detroit.

MAR - 1 1973

*Irene Rendz*
IRENE RENDZ
Division Head, Vital Statistics

Dated ___ SEP ___

[A8291]