IN THE COURT OF APPEALS OF TENNESSEE

EASTERN SECTION

FILED

July 2, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

SANDRA J. SCOTT                    )    ANDERSON COUNTY
                                   )    03A01-9608-CV-00270
      Plaintiff-Appellant         )
                                   )
                                   )
      v.                           )    HON. JAMES B. SCOTT, JR.,
                                   )    JUDGE
                                   )
DR. GERALD B. CALIA                )
                                   )
      Defendant-Appellee           )    VACATED AND REMANDED


KENNETH K. KENNEDY OF KNOXVILLE FOR APPELLANT

MARTIN L. ELLIS and VONDA M. LAUGHLIN OF KNOXVILLE FOR APPELLEE



O P I N I O N



                                   Goddard, P.J.



       This medical malpractice suit arises out of surgery

performed on Sandra Scott's feet by Dr. Gerald Calia on May 17,

1989. Ms. Scott contends that Dr. Calia was negligent in his

medical care of her. She insists on appeal that the Trial Court

was in error in directing a verdict against her at the close of

her proof.

Ms. Scott raises the following two issues on appeal:

I. Did the trial court err in excluding the testimony of Dr. Marion C. Harper on the issues of causation under the requirements of § 29-26-115, Tenn. Code Ann., 1996?

II. Was the trial court's sua sponte grant of directed verdict proper under Tennessee Rules of Civil Procedure 50.01?

In April 1989 Ms. Scott sought treatment from Dr. Calia, a podiatrist, to correct a variety of ailments afflicting her feet. Ms. Scott agreed to have Dr. Calia perform surgery on her feet. Dr. Calia performed five separate surgical procedures on each of Ms. Scott's feet. Ms. Scott continued to visit Dr. Calia for post-operative evaluations. Despite following Dr. Calia's instructions for the care of her surgical wounds that remained after the surgery, the surgical wound on her right great toe failed to heal.

Eight months after her surgery, Ms. Scott sought the opinion of Dr. Marion C. Harper, an orthopedist associated with Vanderbilt Hospital in Nashville, Tennessee. Dr. Harper performed a second surgery in February 1990 to combat an infection that had invaded the bone of Ms. Scott's great right toe. Dr. Harper also later performed a third surgery to close the wound on Ms. Scott's great right toe that had been open since the May 1989 surgery performed by Dr. Calia.

2

The requirements necessary for a plaintiff to establish a prima facie case of medical malpractice is set out in T.C.A. 29-26-115. We quote the pertinent provisions as follows:

**29-26-115. Claimant's burden in malpractice action -- Expert testimony -- Presumption of negligence -- Jury instructions.** -- (a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred;

(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

To satisfy the statutory requirements, Ms. Scott had Dr. Ivan Cooper, a podiatrist surgeon from East Tennessee, testify at trial. Dr. Cooper testified that Dr. Calia breached the standard of care for podiatrists. First, Dr. Cooper testified that he breached the standard of care by performing too many surgical procedures during one operation. Second, Dr. Cooper testified that he breached the standard of care by not taking a culture to determine if an infection was present in the open wound. Finally, Dr. Cooper testified that he breached the standard of care by not performing a second surgery to cover an exposed wound. However, Dr. Cooper testified that he had only seen Ms. Scott on two occasions and was not in a position to

3

testify about any damages that may have resulted from Dr. Calia's negligence.

The parties do not dispute that Dr. Cooper's testimony satisfied the standard of care requirements set out in T.C.A. 29-26-115(1) and (2), but that his testimony did not satisfy the causation requirement set out in T.C.A. 29-26-115(3). Ms. Scott attempted to satisfy this statutory requirement with the testimony of Dr. Marion Harper who, as stated earlier, became Ms. Scott's treating physician. Dr. Calia made a motion in limine to exclude any reference to causation as it relates to any alleged deviation on the part of Dr. Calia because Dr. Harper readily admitted that he lacked any knowledge concerning the recognized standard of acceptable, professional practice in the profession and specialty of podiatry. The Trial Court granted Dr. Calia's motion in limine as to some of Dr. Harper's testimony because he was unfamiliar with the standard of care. Ms. Scott insists that she could have satisfied the causation requirement through the deposition testimony of Dr. Harper.

Contrary to the holding of the Trial Court, a plaintiff in a medical malpractice suit may satisfy the causation requirement found in T.C.A. 29-26-115(3) with testimony from a doctor unfamiliar with the standard of care. For example, a doctor, who is unfamiliar with the standard of care, may nevertheless testify that a specific act of the defendant, such as prescribing a certain drug to which the plaintiff is allergic,

4

caused the plaintiff to suffer injuries which would not have occurred if the plaintiff had not taken the drug. Thus, we must review the deposition testimony of Dr. Harper to determine whether the Trial Court properly granted a directed verdict for Dr. Calia.

Upon consideration of a motion for directed verdict, the trial court must look to all the evidence, take the most legitimate view of it in favor of the opponent of the motion, and allow all reasonable inferences from it in his favor and discard all countervailing evidence. A directed verdict is only proper when there is no controversy as to any material fact that would be determinative of the case. See Crosslin v. Alsup, 594 S.W.2d 379 (Tenn. 1980). Where the proffered evidence leaves to speculation a determinative fact in a lawsuit, the party having the burden of proving the fact must suffer the loss. Leonard v. Gilreath, 625 S.W.2d 722 (Tenn. App. 1981), citing Reserve Life Insurance Co. v. Whittemore, 59 Tenn. App. 495, 442 S.W.2d 266 (1969). A case does not have to be submitted to a jury where the plaintiff's verdict would be based on speculation, conjecture, or a mere glimmer of evidence. Sadek v. Nashville Recycling Co., 751 S.W.2d 428 (Tenn. App. 1988).

During direct examination of Dr. Harper in his deposition the following testimony was elicited:

Q    Doctor, have you formed an opinion based upon a reasonable degree of medical certainty as to whether or

5

not that diagnosis of chronic osteomyelitis [infection of the bone] was causally related to the surgery performed by Dr. Calia on 5-17-89?

. . . .

A     Yes, I believe it was related.

. . . .

Q     Okay.  What about the great right toe, Doctor?  What did it look like prior to surgery -- corrective surgery by you?

A     It assumed a position of extension, i.e., it was tending to cock up and also deviate toward the mid line, toward the mid portion of the body.

Q     Is that normal?

A     No.

Q     What was the cause of that, please, Doctor, within a reasonable degree of medical certainty?

A     The prior surgery.

. . . .

Q     Okay.  On 2-5-90, Doctor, the first time you performed a debridement or debridement on her, were there any kind of pathology reports at that time?

A     Yes.

Q     What did they reveal, please?

A     The surgical pathology note dated 2-5-90, or referring to the specimen obtained on 2-5-90, is read out as final diagnosis being bone debridement of right great toe, colon, focal acute inflammation compatible with osteomyelitis, gram-positive cocci present.

Q     Okay.  Doctor, again, based upon a reasonable degree of medical certainty, have you formed an opinion as to the etiology or cause of that pathology report?

. . . .

A     Yes.

Q     Okay.  And what is that, please, Doctor?

6

A      Prior surgery.[1]

In light of the foregoing we conclude there was sufficient evidence presented as to causation to preclude the Trial Court directing a verdict.

Moreover, although counsel for Ms. Scott seemed to concede Dr. Cooper's testimony did not meet the causation requirement, we believe it did:

> Q      All right. Let's go on, Doctor. You keep talking about infection, and the failure to recognize that infection was negligence, that you're familiar with the standard of care practiced in podiatrics in Knox County, and that the deviation caused some damage. I don't see anywhere in there Doctor, that you criticized Dr. Calia about the type, or the number, of procedures he performed on Ms. Scott; have I read it correctly?
>
> A      I guess, it -- the bottom line is he did too much in one area.
>
> Q      And I don't see that anywhere in this affidavit.
>
> A      Yeah. But that's what happened. I mean, I know you're talking from the words and things now -- just -- that's what went wrong. If he hadn't done so much in that one area, then the infection wouldn't have had a chance to start because the healing wouldn't have been hampered so much by all the little blood vessels and all the things that were violated.
>
> . . . .
>
> Q      You told me in one of your depositions that it would have been better to break these surgeries up -- if you're going to do these procedures, Dr. Calia, you should break them up into two or three or four

_____

[1]      A portion of Dr. Harper's answer was excluded. His full answer was "That that infection was a complication of her prior surgery."

7

different procedures -- different operations, different times. Do you recall that testimony?

A    Yes, sir.

Q    And have you been told that Dr. Akerman[2] is of the opinion that that would not be a good idea because you would expose the patient to multiple opportunities for infection -- that the only reason to do multiple surgeries would be to create a bigger fee? Have you been advised of that, Dr. Cooper?

A    Well, let me address that a second.

Q    Doctor, can you answer "yes" or "no"? Then feel free to explain.

A    Yes, I am aware that she has said that, but she is wrong. The proof's in the pudding. For you to really understand what I mean by that is that -- to have an infection in a young individual after foot surgery is rare. It is unusual, especially of great magnitude because, if it were anything other than unusual, then who wants to start with something that would end with this much of a hassle? It's the risk -- I think yesterday I talked about the standard of care. The risk of doing all of what was done, in the area that it was done, just was too much for this foot to heal from. And it put too much burden on it, and it's not beyond any kind of reasonable thinking to understand how all this injury -- surgical trauma to this area -- even if it were done meticulously. I mean, just -- there were too many blood vessels violated. There was just too much done in a small area. So I'm not really opposed to multiple procedures. It's where they're done and the multiplicity in an area.

Q    Okay. Doctor, have you formed an opinion based upon a reasonable degree of medical certainty as to whether or not this permanent partial disability rating which you have assessed her is casually related or connected to the surgery that Dr. Calia performed on her on 5-17-89?

A    Yes.

---

[2]    Dr. Akerman is also a podiatrist.

8

Ms. Scott also complains that the Court _sua sponte_ directed a verdict against her in this case. The law seems clear that a trial judge has the right, although he should use it sparingly, to direct a verdict _sua sponte_. _Burn v. Tenn-Val Realty, Inc._, an unreported opinion of this Court, filed in Knoxville on January 28, 1986. In the case at bar, after the Trial Court has indicated to counsel his intent to grant a directed verdict, counsel for Dr. Calia belatedly, and apparently as an afterthought, stated "and I guess for the record, I do move for directed verdict, just so it's in the record."

In view of the foregoing we believe the Trial Judge did in fact direct a verdict _sua sponte_ but, under _Burn_, we are obligated to sustain his action unless directing of a verdict under the proof adduced was improper.

Having concluded that the Trial Court was in error in directing a verdict, we vacate the judgment entered thereon. The cause is remanded for further proceedings not inconsistent with this opinion. Costs of appeal are adjudged against Dr. Calia.

_____
Houston M Goddard, P.J.

9

CONCUR:

_____
Don T. McMurray, J.


_____
Charles D. Susano, Jr., J.

10